IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JASON SHANNON STEWART and                                              PLAINTIFFS
ROBERT JASON DILLARD

v.                Civil No.  4:19-cv-04127 (consolidated with 4:19-cv-04128)

JANA TALLENT, *et. al.*                                                 DEFENDANTS

## **ORDER**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiffs proceed *pro se* and *in forma pauperis*.  Currently before the Court are Plaintiff Dillard's two Motions to Compel  (ECF No's. 32, 44).

Plaintiff Dillard filed his first Motion to Compel on May 28, 2020.  (ECF No. 32).  In it, he alleges that he attempted to confer with Defendants on April 13, 2020, concerning their response to his first request for documents, and, as of May 23, 2020, had received no response from Defendants' counsel. (*Id*. at 1).  On June 1, 2020, Defendants filed their Response.  (ECF No. 33). Finding the contents of this Response to be insufficient to meet the requirements of the Federal Rules of Civil Procedure, the Court ordered Defendants to provide specific and factual grounds to support their objections to each of Plaintiff's discovery requests noted in his Motion to Compel. (ECF No. 34).  Defendants filed their second Response on June 30, 2020.  (ECF No. 41).

On July 20, 2020, Plaintiff Dillard filed a second Motion to Compel, seeking the same documents, and providing a Reply to Defendants' Response and additional arguments for each of the items. (ECF No.  44).  Defendant submitted their Response on July 22, 2020.  (ECF No. 45).

The case centers on the allegations of both Plaintiffs that officers failed to remove their service weapons prior to entering cells in the Howard County Jail to search for contraband on

September 8, 2010, thereby placing the lives of inmates at risk.  The discovery items at issue in Plaintiff Dillard's motions are as follows:

**Request 1: Color photographs of the signs stating "No firearms allowed beyond this point."**  Plaintiff states Defendants told him there were no such photos. (ECF No. 32 at 2-3). Defendants respond that they do not have any photos of the signs and they informed him of the location of the signs in response to another of his interrogatories.  (ECF No. 41 at 1).  Plaintiff argues the effort to take the photographs would be minimal and would be valuable to his case.  (ECF No. 44 at 1-2).  Defendants point to their prior response.  (ECF No. 45 at 2).

**Request 2: All video footage pertaining to the approximate date and time of his Complaint.**  He states Defendant responded that the footage had been taped-over every 14-21 days unless a fight or assault occurs, in which case the tape is saved.  (ECF No. 32 at 3).  Plaintiff argues that the incident in question was an "extreme event where multiple request[s] and grievances were written about this event within 14 days of the event so there should be a copy of the footage." (*Id*.).  Defendants respond that there are no copies of video footage because the video footage records over itself approximately every 14-21 days, and the Howard County Jail only makes copies if there are jail fights or assaults, etc. (ECF No. 41 at 2).  They further state that "[a]pparently there was a power surge or something that caused a glitch during the time in question so there was no video footage."  (*Id*.).  Plaintiff replies that Defendants' answer to another interrogatory of his stated that the Howard County Jail has a backup battery for the camera system, therefore a power surge should not have cut the cameras  (EC No. 44 at 3).  Defendants repeat their argument concerning a system glitch, and argue that they cannot produce what is not in their possession, custody, or control.  (ECF No. 45 at 2).

**Request 4: Plaintiff states he saw other inmates submit grievances and complaints concerning the incident detailed in this complaint, and requests copies of those grievances and complaints.** (ECF No. 32 at 3). Defendants respond that "this request has nothing to do with Defendant." They further state that they have no way of knowing which inmates filed grievances about this matter, and they will provide such grievances if Plaintiff would provide a list of inmates who filed them. (ECF No. 41 at 2). Plaintiff responds that Howard County is an extremely small jail that houses only between 50-60 inmates. It would, therefore, take little effort to review inmate grievances filed over a short period of time for those inmates in A,B, and C pod. He further provides a list of eleven names of inmates who filed grievances on the issue. (ECF No. 44 at 4). Defendants state they have forwarded this list of names to the jail so they could search for these files. (EC No. 45 at 3).

**Request 5: Plaintiff requested all documentation concerning an alleged power outage between September 8 through September 18 of 2019**. Plaintiff states this is relevant because Defendants claim no video footage is available because a power outage took down the cameras. (ECF No. 32 at 4). Defendant argue this evidence is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of relevant evidence. They further argue they are unable to determine why there was a glitch with the camera system, and if it was due to a power surge, that does not necessarily meant that the power went out. There is nothing in the jailers' logs about a power outage. (ECF No. 41 at 2). Plaintiff did not address this Request in his second motion.

**Request 8: the identity of all individuals who were housed in A, B and C pod at the timing of this alleged incident.** He further listed those names he could remember. Defendants respond that this has nothing to do with Defendants. Further, Defendants researched the names provided and determined that seven of the inmates Plaintiff identified appear to be free-world, so

they would not be able to locate them. The remaining individuals are incarcerated in other facilities. Lastly, they argue that it is not their responsibility to obtain written statements on behalf of Plaintiff. (ECF No. 41 at 3). In his second Motion, Plaintiff argues that they know what facilities these inmates are incarcerated in, and asks that Defendants be ordered to obtain statements from those individuals. (ECF No. 44 at 5). Plaintiff further provides addresses for four of the free-world individuals. (*Id.*). Defendants argue that Plaintiff can send written communication to the individuals for whom he has addresses in order to obtain their statements concerning the incident. (ECF No. 45 at 3). They repeat that it is not their responsibility to obtain written statements on Plaintiff's behalf; Plaintiff has the burden of proving his case and obtaining statements from individuals on his behalf. (*Id.*).

**Request 9: A statement from the Nashville Police chief concerning placement of the weapons in the incident.** (ECF No. 32 at 5). Defendant argue this has nothing to do with them. They further note that Plaintiff has been given copies of the written statement of Jailer Eddie Daniel, Deputy, Sheriff Justin Garner, Jailer Lindsey Bennett, Nashville PD Officers Travis Turner, Jarrett, Rogers, and Francisco Mercado, who were all present and participated in the jail search for missing contraband. Chief Amy Marion was not present, and any statement she might compose would be based on what she was told by her officers, which is exactly what would be in their written statements. (ECF No. 41 at 4). Plaintiff did not address this Request in his second motion.

Keeping in mind that the party resisting production of requested information bears the burden of establishing lack of relevancy, *Martindale Corp. v. Heartland Inns of Am., L.L.C.*, 259 F.R.D. 174, 179 (N.D. Iowa 2009), the Court will now address Plaintiff's discovery requests in turn.

There does not appear to be any dispute amongst the parties that the signs banning firearms in certain areas of the jail existed, any dispute as to what the signs said, or any dispute as to where the signs were located. Nor does Plaintiff identify his need for actual color photographs, other than to say they would be "valuable" to his case and would take minimal effort for Defendants to produce. While the Court agrees that the effort would be minimal, it does not agree color photographs of the signs are relevant to the case, and the photos would be cumulative of existing evidence as well. Defendants have met their burden on this discovery request.

Plaintiff's request for copies of inmate grievances about the incident is moot, as Defendants have indicated that they provided a list of the eleven names provided by Plaintiff to the Howard County Jail, and copies of any grievances found would be provided to Plaintiff. Plaintiff has not notified the Court that he has experienced any difficulty in receiving these documents.

Regarding Plaintiff's request for witness statements from both free-world former inmates and incarcerated witnesses, Defendants are correct that it is not their responsibility to obtain written statements from third parties in support of Plaintiff's case. Pursuant to Federal Rule of Civil Procedure 35, parties are only required to produce those items within their possession, custody, or control.

Regarding Plaintiff's request for a statement from Nashville Police Chief Amy Marion, she was not present at the Howard County Jail and any statement would be based on the reports of her officers, which were provided to Plaintiff. This evidence is, therefore, cumulative.

This leaves Plaintiff's request for video footage on the day of the incident, as well as documentation concerning the power issue which Defendants represent took down the cameras on that day. As the case centers on whether service weapons were brought into the inmates' cell area, the content of the video and documentation of any reason the video might be unavailable, is

relevant to the case. Both Plaintiffs submitted copies of inmate request forms regarding the incident, in which Defendant Tallent's response states that she checked the cameras and there were no recordings. She further states "there must have been a power surge or something that stopped the cameras." (4:19-cv-4127 ECF No. 1 at 3; 4:19-cv-4128 at ECF No. 1 at 4). Unfortunately, Defendants cannot produce video that does not exist, which they have repeatedly stated is the case. They can, however, produce any documentation which exists regarding why the cameras were not functioning on the day of the incident, whether for power-related reasons or otherwise. Defendants shall provide this documentation to Plaintiffs no later than October 29, 2020.

Accordingly, Plaintiff Dillard's two Motions to Compel (ECF No's. 32, 44) are GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED this 15th day of October 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE